UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AKIM A. BROWN,

        Petitioner,

v.                                                                        Case No. 20-cv-0995-bhl

CHERYL EPLETT, Warden,

        Respondent.

## ORDER DENYING § 2254 HABEAS PETITION

        In 2014, a Milwaukee County jury found Petitioner Akim A. Brown guilty of one count of second-degree sexual assault. Brown was sentenced to twelve years of initial confinement followed by eight years of extended supervision. In postconviction proceedings and on direct appeal, Brown contended he received ineffective assistance of counsel. After Brown's conviction was affirmed, he filed a petition for writ of habeas corpus in this Court, invoking 28 U.S.C. § 2254. Because Brown has not established that he is entitled to habeas relief, his petition will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

        Brown's conviction stems from a November 2013 encounter with "L.S." *State v. Brown*, No. 2017AP1332-CR, 2018 WL 5821784 (Wis. Ct. App. Nov. 6, 2018). Brown met L.S. on Saturday, November 23, 2013, at a mutual friend's weekend gathering in Green Bay, Wisconsin. On Sunday evening, Brown gave L.S. a ride back to her home in Milwaukee, arriving around midnight. *Id.* at *1.

        According to L.S., after getting to her apartment, Brown asked to use her bathroom. *Id.* He then refused to leave, grabbed her by her shirt collar, pulled her onto her bed, and sexually assaulted her. *Id.* L.S. repeatedly told him "no" but he held her down and did not relent. *Id.* After

---

[1] In deciding a habeas petition, the Court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by "clear and convincing evidence." *Id.* The background facts are based on the Wisconsin Court of Appeals decision affirming Brown's conviction. *See State v. Brown*, No. 2017AP1332-CR, 2018 WL 5821784 (Wis. Ct. App. Nov. 6, 2018). Where the Court of Appeals' factual discussion is incomplete, the Court has augmented it by citing directly to the trial transcript.

the assault, L.S. immediately got up and showered, after which Brown also took a shower. *Id.* L.S. then pretended to be asleep, and Brown left her apartment and drove home to Kenosha. *Id.*

The next day (Monday), L.S. reported the incident to Elizabeth Simmons, a friend in Green Bay with whom she had been staying when she met Brown. *Id.* at *1–2. L.S. then went to her work, where she also reported the assault to her supervisor. *Id.* at *1. On her way home from work, she stopped at an urgent care center but did not stay for treatment because she was embarrassed and scared. *Id.* Two days later, on Wednesday, November 27, 2013, L.S. reported the incident to Milwaukee police. *Id.*

Brown was arrested and offered a very different account. *Id.* During a custodial interview, he asserted that the encounter with L.S. was entirely consensual. *Id.* In describing the incident to police, Brown claimed, among other things, that L.S. had stimulated herself while they were having sex. *Id.*

Brown's case went to trial four months later. *Id.* At trial, L.S. testified consistent with her prior statement to the police. She told the jury that when she and Brown arrived at her home, Brown asked for permission to use her bathroom and she agreed. (ECF No. 10-2 at 78–79.) L.S. further testified that Brown then went into her bedroom, removed his clothes, and forced L.S. to have sexual intercourse without her consent. (*Id.* at 81–89; ECF No. 10-3 at 18–20.) L.S. testified that she tried to keep her pants up and told Brown, "no, no, you shouldn't be doing this, I don't know you, I barely know you." (ECF No. 10-2 at 85.) L.S. testified she tried to keep her legs closed to prevent Brown from having intercourse, but he overpowered her and forced her legs apart. (ECF No. 10-3 at 16.) She admitted she did not scream during the assault, explaining that she did not know if anyone would have heard her because she lived in an apartment building and did not know if her neighbors were home. *Brown*, 2018 WL 5821784, at *1. She also admitted she had not left the apartment or called the police when Brown took a shower after the assault. *Id.*

The police officer who interviewed L.S. months earlier also testified. *Id*. at *2. The officer summarized L.S.'s statements to the police when she reported the incident. *Id.* The officer described L.S. as being "very emotional" during the interview, indicating that "she cried quite a bit." *Id.* The trial also included testimony from L.S.'s friend, Simmons, who described how L.S. had called her on Monday morning and told her that she had been "taken advantage of" and that she was in pain after the incident. *Id.* Simmons also testified that L.S. cried as she related what happened and that L.S.'s demeanor was sad and scared during their call. *Id.* The testimony of the

officer and Simmons regarding what L.S. had reported to them was consistent with L.S.'s trial testimony.  *Id.*

Brown testified in his defense.  *Id.*  The defense's theory was that L.S. had falsely accused Brown of sexual assault after having regrets over consenting to have intercourse with him.  *Id.*  Brown testified that he and L.S. had been "playful[ly] flirt[ing] during conversations over the weekend in Green Bay.  *Id.* (alterations in original).  Brown stated that L.S. informed him during the drive to her residence that she had "checked [him] out" on the internet and looked at his Facebook page.  *Id.* (alteration in original).  Brown also testified that during the ride to her apartment, he and L.S. had discussed Brown spending the night at her home and he denied having asked to use her bathroom.  *Id.*  Brown also provided a detailed description of the sexual encounter. *Id.*  He testified that L.S. changed her clothes, put lotion on her body, and joined him in bed where he was watching a movie.  *Id.*  Brown testified that they kissed on the bed and as sexual intercourse commenced, L.S. had her hands on the sides of his body and her legs were wrapped around his hips.  *Id.*  Brown testified that he kissed her neck and her ear and was "wooing, physically wooing [L.S.] into sex."  (ECF No. 10-3 at 95–96.)  Brown testified that L.S. did not resist by trying to keep her legs from opening and he and L.S. were in a "missionary sex position."  (*Id.* at 97.)  Brown testified that he and L.S. were "conversating" after having sexual intercourse and, using coarse language, Brown told the jury that L.S. commented on how the intercourse made her sore.  (*Id.* at 98.)  Brown reiterated the coarse language, saying "[t]hat's what she actually said to me."  (*Id.*)  Brown testified that he did not force himself on L.S. or hold her down.  *Brown*, 2018 WL 5821784, at *2.  He also testified that L.S. never told him "no" or to stop, nor did she resist or struggle while they had sex.  *Id.*

During its deliberations, the jury asked to review the testimony of Brown and L.S. specifically relating to the sex act.  *Id.*  With the agreement of both parties, the trial court had the court reporter read back to the jury both Brown's and L.S.'s direct testimony describing the incident from the time that they entered L.S.'s apartment to the time that Brown took a shower. *Id.*  The jury found Brown guilty of one count of second-degree sexual assault.  *Id.*  The circuit court sentenced Brown to twelve years of initial confinement followed by eight years of extended supervision.  *Id.*  The judgment of conviction was entered on May 28, 2014.  (ECF No. 9-1.)

Brown's postconviction attorney filed a motion claiming that Brown's trial counsel had provided Brown with ineffective assistance and requested a new trial.  *See Brown*, 2018 WL

5821784, at *2. Postconviction counsel argued that trial counsel improperly failed to elicit testimony from Brown that L.S. had stimulated herself during the sex act, conduct he believed would have helped establish that the encounter was consensual. *Id.* Counsel also argued that trial counsel improperly failed to object to the testimony from L.S.'s friend Simmons and from the police officer who both repeated L.S.'s prior statements about the details and non-consensual nature of the encounter. *Id.* Postconviction counsel contended that trial counsel should have objected to both witnesses' testimony as inadmissible hearsay that improperly bolstered L.S.'s credibility. *Id.*

The state circuit court held extensive evidentiary hearings (called *Machner* hearings under Wisconsin law[2]) concerning Brown's ineffective assistance allegations. These hearings were presided over by a new judge, who took testimony over multiple days in April, August and September of 2014. *See id.* at *3. During these hearings, Brown's trial counsel expressed his difficulties in preparing for trial with Brown, testifying that during trial strategy discussions, Brown tried to "control the conversation," would not stay focused, and his account provided new details of the incident "every time [Brown] opened his mouth." *Id.* Trial counsel admitted that he did not have a strategic reason for failing to object to the testimony containing prior consistent statements. *Id.*

The postconviction court denied Brown's request for relief. It noted that the relationship between Brown and his trial counsel "was not the best" due to disagreements over trial strategy but determined that counsel's performance did not fall below the level of reasonable representation to the extent that Brown was prejudiced. *Id.* The court explained that "even though there were many things about [trial counsel's] performance that he even recognize[d] could have been done differently . . . [t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Id.* (alterations in original). In a June 2, 2017 oral ruling, the court denied Brown's ineffective assistance challenge. (ECF No. 9-14.) A written order followed on June 15, 2017. (ECF No. 9-2.)

Brown then unsuccessfully appealed that denial to the Wisconsin Court of Appeals. The court of appeals cited the two-part test applicable to claims of ineffective assistance laid out in

---

[2] A *Machner* hearing is an "evidentiary hearing to evaluate counsel's effectiveness, which includes counsel's testimony to explain his or her handling of the case." *State v. Balliette*, 805 N.W.2d 334, 341 (Wis. 2011) (citing *State v. Machner*, 285 N.W.2d 905 (Wis. Ct. App. 1979)).

*Strickland v. Washington*, explaining that Brown was required to "show that his trial counsel's performance was deficient and that the deficiency prejudiced the defense." *Brown*, 2018 WL 5821784, at *3 (citing *Strickland*, 466 U.S. 668, 687 (1984)). In applying this standard, the appellate court confirmed that the "central issue in this case is whether the sexual intercourse between Brown and L.S. was consensual." *Id.* The court also noted that witness credibility was key given that Brown and L.S. were the only two people present during the incident. *Id.* After analyzing the evidence, the appellate court concluded that the record showed the jury had accepted L.S.'s testimony over Brown's version of events and, therefore, even if Brown's attorney rendered ineffective assistance of counsel, Brown's claim failed because he had not shown that the verdict would have been different if the alleged errors had not been made. *Id.* at *4–5. In sum, Brown had "failed to prove the prejudice prong the *Strickland* analysis, and thus his ineffective assistance claim" failed. *Id.* at *5.

Brown filed a motion for reconsideration, which the court of appeals denied. (ECF No. 9-7.) Brown then filed a petition for review in the Wisconsin Supreme Court, which was denied. (ECF Nos. 9-8, 9-10.) Brown did not file a petition for writ of certiorari with the United States Supreme Court. On July 1, 2020, Brown filed a petition for writ of habeas corpus with this Court. (ECF No. 1.)

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) limits a federal court's ability to grant habeas corpus relief. With respect to a claim adjudicated on the merits in state court, a habeas petition can be granted only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted). It is intentionally very difficult to meet. *See Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

A state court decision is "contrary to . . . clearly established Federal law" within the meaning of § 2254(d)(1) if the state court "applie[d] a rule different from the governing law set forth" by Supreme Court precedent or when the state court "decides a case differently than [the

Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). A state court decision involves an "unreasonable" application of established precedent within the meaning of § 2254(d)(2) when the "state court identifies the correct governing legal principle . . . but unreasonably applies it to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Under either prong, it is not enough that "a federal court believes the state court's determination was incorrect" or erroneous. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Rather, the state court's application of clearly established law must be "objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316 (2015). The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility that fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

## ANALYSIS

On habeas, Brown maintains his trial counsel provided him with ineffective assistance in two ways.[3] First, Brown contends that trial counsel improperly failed to elicit testimony from Brown that L.S. stimulated herself during the sexual intercourse and concerning the act of intercourse itself. Second, Brown argues his trial counsel was ineffective in failing to object to the police officer's testimony recounting L.S.'s statements during her police interview. Under AEDPA, Brown is required to show that no fair-minded jurist would conclude that the Wisconsin Court of Appeals' decision was consistent with the applicable United States Supreme Court precent. *See Harrington*, 562 U.S. at 102. Because Brown has failed to make this showing on either ground, his petition will be denied.

I. **The Wisconsin Court of Appeals Did Not Unreasonably Apply *Strickland* in Concluding Brown Was Not Prejudiced by Counsel's Failure to Elicit Testimony.**

The controlling Supreme Court precedent for an ineffective assistance of claim is *Strickland v. Washington*, 466 U.S. 668 (1984). To establish a violation of *Strickland*, a petitioner

---

[3] Brown appeared to raise a third claim in his petition—that the interests of justice warrant a new trial. (ECF No. 1 at 10–11.) In its answer, Respondent denied this was a proper claim because Brown did not raise it in the Wisconsin courts and therefore Brown procedurally defaulted on it. (ECF No. 9 at 4–5.) Brown did not pursue this claim in his opening brief. (*See* ECF No. 21.) The Court thus considers the argument abandoned and will not address it. *See, e.g.*, *Duncan v. State of Wis. Dep't of Health and Fam. Servs.*, 166 F.3d 930, 934 (7th Cir. 1999) (stating that arguments that a party fails to develop in its opening brief in any meaningful manner will be deemed waived or abandoned).

must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. Thus, the *Strickland* test requires the petitioner to establish both (1) deficient performance by counsel and (2) prejudice. Regarding the deficient-performance prong, great deference is given to counsel's performance, and the petitioner has a heavy burden to overcome the strong presumption of effective performance. *Id.* at 690; *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003). This burden requires Brown to "establish specific acts or omissions of his counsel which constitute ineffective assistance," to which this Court then "determine[s] whether these acts or omissions were made outside the wide range of professionally competent assistance." *Coleman*, 318 F.3d at 758 (citing *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000)). To show prejudice, Brown must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). A court need not address both components; if the defendant makes an insufficient showing on one, the inquiry ends. *Strickland*, 466 U.S. at 697.

In this case, the Wisconsin Court of Appeals applied Wisconsin law incorporating the *Strickland* two-part test for evaluating claims of ineffective assistance of counsel. *See Brown*, 2018 WL 5821784, at *3. The appellate court correctly identified both parts of the test, noting that it required Brown to "show that his trial counsel's performance was deficient and that the deficiency prejudiced" him. *Id.* (citing *Strickland*, 466 U.S. at 687). The appellate court also correctly explained that *Strickland*'s prejudice prong required him to show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *State v. Love*, 700 N.W.2d 62, 70 (Wis. 2005). It also explained that a reasonable probability was "a probability sufficient to undermine the confidence in the outcome." *Id.* (quoting Love, 700 N.W.2d at 70.) The appellate court then discussed Brown's arguments and the relevant evidence and concluded that even if trial counsel's errors constituted deficient performance, Brown had "not demonstrated that the verdict would have been different." *Id.* at *4.

Because the state court applied the appropriate rule from *Strickland*, this Court applies an even higher standard of habeas deference. As the United States Supreme Court emphasized:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in the United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an incorrect application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington*, 562 U.S. at 101 (citation omitted). The Supreme Court acknowledged that "[s]urmounting *Strickland*'s high bar is never an easy task," and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* at 105 ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so.") (citations omitted); *see also Woods*, 575 U.S. at 31617 ("[F]or claims of ineffective assistance of counsel, [] AEDPA review must be doubly deferential in order to afford both the state court and the defense attorney the benefit of the doubt.") (internal quotation marks omitted).

The Wisconsin Court of Appeals held that Brown failed to establish ineffective assistance of counsel because he did not demonstrate that the verdict would have been different if the jury had heard the testimony that Brown argued should have been elicited. *Brown*, 2018 WL 5821784 at *4. With respect to the testimony about L.S.'s self-stimulation, the court of appeals acknowledged that the testimony was relevant to the issue of consent. *Id.* But it concluded that Brown had not proven that counsel's failure to introduce the evidence was prejudicial, noting that the jury believed L.S. and not Brown based on other substantial evidence supporting each side's version of events. The court of appeals explained that "Brown's testimony about the incident was very detailed and included other information that suggested the intercourse was consensual, such as the alleged flirting that had occurred during the weekend, making plans during the drive . . . to spend the night at L.S.'s residence, and L.S.'s actions once they were at her residence." *Id.* Notwithstanding this evidence, the jury believed L.S. *Id.* The appellate court reasoned that even if Brown's attorney rendered ineffective assistance in not questioning Brown about the self-stimulation, Brown's claim still failed because he had not made the required showing that the

verdict would have been different if the jury had heard this testimony "in addition to the substantial testimony given by Brown that suggested L.S. had consented to having sexual intercourse." *Id.* The appellate court also pointed out that the jury heard Brown's testimony about L.S.'s consent twice, once during his direct examination and again during jury deliberations when the court reporter read it back. *Id.* This Court cannot conclude that no reasonable jurist would agree with this analysis.

Challenging the court of appeals' analysis, Brown contends the omitted self-stimulation testimony was his "only proof and strongest evidence that the sexual intercourse was consensual." (ECF No. 21 at 39.) That is incorrect. Brown testified to many details that, if accepted by the jury, would have suggested the encounter was consensual. That evidence, which the jury apparently rejected, included his testimony about the alleged flirting that occurred in Green Bay, his discussion with L.S. about spending the night at her apartment while driving to Milwaukee, and L.S.'s alleged actions once they arrived at her residence, where he claims she changed her clothes, applied lotion, and climbed into bed with him. *See Brown*, 2018 WL 5821784, at *2. Other testimony that the jury did not credit included Brown's report that he kissed L.S.'s neck and ear and "physically wooed" her into sex. (ECF No. 10-3 at 95–96.) He also claimed that as sexual intercourse commenced, L.S. placed her hands on his body and wrapped her legs around his torso. *Brown*, 2018 WL 5821784, at *2. And he testified that L.S. did not resist by trying to keep her legs from opening and he and L.S. were in a "missionary sex position." (ECF 10-3 at 97.) Brown further testified that L.S. never said "no" or "stop." *Brown*, 2018 WL 5821784, at *2. Brown testified that after L.S. showered, she emerged naked and while Brown was also naked and, on the bed, they engaged in conversation about being naked and their respective comfort levels. (ECF No. 10-3 at 98–99.) L.S. admitted that she did not scream, call for help or leave her apartment when Brown went into the shower. *Brown*, 2018 WL 5821784, at *1. All of this evidence and testimony was admitted and all of it supported Brown's defense. As reasonably determined by the appellate court, this detailed testimony, if accepted, more than adequately made Brown's point that L.S. not only consented to sexual intercourse but was a willing and active participant. Brown's suggestion that he was left with no evidence supporting his theory is simply wrong.

Moreover, the reasonableness of the state court's analysis is supported by the reality that Brown's testimony concerning L.S. stimulating herself might have offended the jury. During the *Machner* hearing, Brown's trial counsel stated that during L.S.'s testimony he did not ask her

whether she had stimulated herself because he did not know what her answer would be and, if she denied it, the question could have alienated the jury. (ECF No. 10-7 at 110.) That was a reasonable strategic decision.

Brown gets no further in complaining about trial counsel's failure to elicit his testimony concerning the specific act of intercourse. Brown has not shown there was any dispute over whether he and L.S. engaged in intercourse and it is unclear what material testimony he thinks was missed. In his reply, Brown argues that the failure to elicit this testimony was prejudicial because during closing arguments, the prosecutor argued that while Brown provided details about what happened "around the actual crime," Brown "glossed over the actual crime that occurred, the sexual intercourse that he forced on [L.S.]." (ECF No. 29 at 7 (citing ECF No. 10-4 at 22.) Brown's argument fails for multiple reasons. As an initial matter, he waived this argument by raising it for the first time in reply. *See Darif v. Holder*, 739 F.3d 329, 336–37 (7th Cir. 2014) ("[A]rguments raised for the first time in a reply brief are waived."); *see also United States v. Collins*, 796 F.3d 829, 836 (7th Cir. 2015) ("[The] [c]ourt has long warned that perfunctory and undeveloped arguments are deemed waived.") (internal quotation marks omitted). Moreover, waiver aside, Brown's critique of counsel's performance fails fundamentally because he never explains what the unelicited testimony would have been. The record in fact confirms that he had ample opportunity to offer this testimony. On direct examination Brown's counsel asked Brown, "Apparently the two of you are going to start to engage in intercourse?" (ECF No. 10-3 at 94.) Rather than testifying about the actual sex act, Brown went off on a tangent regarding the smoothness of his feet due to his use of a pumice stone. (*Id.* at 95.) Brown's counsel attempted to redirect Brown and asked, "[h]ow did the sex start?" (*Id.*) Brown testified that he was kissing L.S.'s neck and ear and "physically wooing her" and described L.S. wrapping her legs wrapped around his sides while in a missionary position. (*Id.* at 95–97.) At the *Machner* hearing, Brown's trial counsel testified that Brown provided details about what happened before and after the sex act but refused to talk about the actual sex act. (ECF No. 10-9 at 28.) According to trial counsel, once Brown decided he would testify, Brown told his counsel that "he knew . . . what he would have to testify to." (ECF No. 10-7 at 30.) It appears that Brown had multiple opportunities to testify as to details regarding the specific sex act but, for whatever reason, opted not to. There is no evidence of ineffective assistance on this issue.

In the end, the Wisconsin Court of Appeals reasonably concluded that counsel's failure to elicit the additional testimony Brown identifies would not have created a reasonable probability of an acquittal. It emphasized the existing evidence offered by Brown concerning the consensual nature of the encounter and reasoned that the jury did not believe his self-serving testimony and ultimately credited the testimony of L.S. This is a reasonable analysis under *Strickland*, precluding habeas relief. While Brown insists that the court of appeals "erroneously applied an outcome determinative test for prejudice contrary to *Strickland*" rather than using the "reasonable probability" standard, (ECF No. 21 at 45), the record refutes this contention. The court of appeals articulated the correct standard from *Strickland* and then reasonably applied it to Brown's case. Brown's habeas challenge to his counsel's failure to elicit testimony therefore fails.

II. **The Wisconsin Court of Appeals Did Not Unreasonably Apply *Strickland* in Concluding Brown Was Not Prejudiced by Trial Counsel's Failure to Object to the Police Officer's Testimony Regarding L.W.'s Consistent Statements.**

Brown's second ineffective assistance argument is that trial counsel improperly failed to object to the police officer's testimony recounting L.S.'s prior report of her encounter with Brown, testimony that was consistent with L.S.'s trial testimony. (ECF No. 21 at 41.) Brown contends that this inadmissible evidence essentially allowed the police officer to repeat statements and allegations made by L.S. to police and "improperly bolstered L.S.'s credibility about whether or not she consented to the sexual intercourse." (*Id.* at 42.) Brown further maintains that the prosecution argued that L.S. was more credible because her trial testimony was consistent with the officer's testimony about her prior statement. (*Id.*) Brown believes that this testimony "inappropriately tipped the scales in favor of L.S.'s credibility and undercut [his] credibility." *Id.*[4]

The court of appeals determined that the officer's testimony likely was not admissible and trial counsel's failure to object to its admittance could be deemed a deficiency. *Brown*, 2018 WL 5821784, at *4. But it concluded that Brown had again failed to show prejudice under *Strickland*. *Id.* It noted that the police officer's testimony of L.S.'s prior consistent statements included facts that supported Brown's defense. *Id.* For example, the officer testified that L.S. admitted to her that she did not scream for help during the assault, leave her residence while Brown was in the shower, or immediately call the police after the assault. And, given the abundance of details provided by Brown regarding the night of the incident, many of which suggested that L.S. was a

---

[4] Although he raised the issue in state court, Brown does not challenge counsel's failure to object to Simmons's testimony, which similarly corroborated L.S.'s account.

willing participant in their sexual encounter, Brown had not shown that the addition of this testimony was prejudicial. *Id.* The court explained that even if the failure to object was an error, such evidentiary errors do not have a cumulative impact "sufficient to undermine confidence in the outcome of the trial, especially if the evidence against the defendant remains compelling." *Id.* (quoting *State v. Thiel*, 665 N.W.2d 305, 322–23 (Wis. 2003).

Again, the issue on habeas review is whether the court of appeals unreasonably applied federal law when it concluded that any error was not prejudicial. The test for prejudice on habeas is not whether, but for counsel's unprofessional errors, there is a reasonable probability of a different result; the defendant must show that no "fairminded jurists could disagree" that the state court's decision conflicts with *Strickland*. *See Harrington*, 562 U.S. at 102. Brown has not met this high bar. The Wisconsin Court of Appeals did not unreasonably apply clearly established Supreme Court precedent in rejecting this ineffective assistance of counsel claim. It reasonably concluded that whether Brown's ineffective-assistance arguments were considered individually or in combination, Brown had not established that he was prejudiced. This conclusion has ample support in the record. Brown can establish neither that the state appellate court's decision was contrary to or involved an unreasonable application of *Strickland*'s prejudice standards. Nor, as the record supports the state court's findings, can Brown demonstrate that the decision involved an unreasonable determination of the facts. Accordingly, Brown's petition for writ habeas corpus is denied.

## CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the rules Governing Section 2254 Cases, the Court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitution right. *See* 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is if "reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). The Court declines to issue a certificate of appealability because reasonable jurists could not debate the Court's decision to deny the petition on the merits.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Brown's petition for writ of habeas corpus, ECF No. 1 is **DENIED**, and the case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that because the Court does not find that a reasonable jurist could conclude that the petition should have been resolved in a different manner, *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), a certificate of appealability **SHALL NOT ISSUE**.

Dated at Milwaukee, Wisconsin on March 14, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge